ARTHUR H. LANG
918 East Kennedy Blvd.
Lakewood, NJ 08701
(732) 609-5530
NY Att. Reg. No. 5105408
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------- )
                                        )  Case No: 1:23-cv-
JEST HOLDINGS, LLC.                     ) 04260-DG-RML
                    Plaintiff           )
          v.                            )
                                        )
                                        ) FIRST AMENDED
IRA RUSSACK, HENRY WEINSTEIN, OCEAN     ) COMPLAINT
WOODRUFF DEVELOPMENT CORP., JOSEPH      )
HARRISON, ESQ., and HSK LAW GROUP,      )
LLC., 5901 WEST AVE PROPERTIES LLC.     )
                                        )
                    Defendants          )
--------------------------------------- )

Plaintiff, by way of its attorney, ARTHUR H. LANG, complaining

of the defendants above-named, respectfully shows to this

court and alleges as follows:

## THE PARTIES

1.  JEST HOLDINGS, LLC. ("Plaintiff"), is a New Jersey business

    entity whose principal place of business is 1120 Lexington

    Ave, Lakewood, New Jersey, 08701.

2.  IRA RUSSACK is a domiciliary of New York State whose

    address is 2236 Nostrand Ave, Brooklyn, New York, 11210.

3.  HENRY WEINSTEIN is a domiciliary of New York State whose

    address is 62 William Street, 4th Floor, New York, NY,

    10005.

4.  OCEAN WOODRUFF DEVELOPMENT CORP. (the "Corporation"), is a New York business entity whose address is 2236 Nostrand Ave, Brooklyn, NY, 11210.

5.  JOSEPH HARRISON, Esq., by information and belief is a domiciliary of New York State and licensed to practice law in New York State, currently with HSK Law Group, LLC., whose address is 251 Troy Avenue, Brooklyn, New York, 11213. Phone number 203-444-3551, email JosephHarrisonEsq@gmail.com

6.  HSK LAW GROUP, LLC., by information and belief, is a New York State limited liability company whose address is 251 Troy Avenue, Brooklyn, New York, 11213. Phone number 203-444-3551

## JURISDICTION and VENUE

7.  The Courts of the United State States have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because more than $75,000 is at stake and the plaintiff and the defendants are of diverse citizenship. Plaintiff Jest Holdings, LLC., is a New Jersey entity. All of the defendants are either entities of New York State or natural person citizens of New York State. Defendants Ocean Woodruff Development Corp. and HSK Law Group, LLC., are New

York State entities. Ira Russack, Henry Weinstein, Joseph Harrison are natural person citizens of New York State.

8. The Eastern District of New York is the proper venue pursuant to 28 U.S. Code § 1391 because all defendants are based or reside in Brooklyn, New York.

**FACTS**

9. Defendant Ocean Woodruff Development Corp is a New York Business Corporation with 200 shares of outstanding stock. It owns twelve condominiums located at 353 Ocean Avenue in Brooklyn, by information and belief, valued approximately $8 million.

10. In March 2020 Defendant Ira Russack represented to Plaintiff that Russack owned 50% of the Corporation (100 shares) and that Defendant Henry Weinstein owned the other 50%.

11. By information and belief, the Corporation did not issue paper certificates of stock to its two owners.

12. On March 12, 2023, Plaintiff agreed to loan Russack $1.5 million at 12% interest (one percent a month) secured by Russack's shares in the Corporation. Deductions were made for charges and fees, transactional expenses, an interest reserve and prepaid interest.

13. Russack thereby assigned his shares in the Corporation to Plaintiff (Exhibit A).

14. Also on March 12, 2020 Russack signed a confession of judgment admitting to the $1.5 million debt. (Exhibit B).

15. Although Russack's signed confession of judgment cannot be summarily enforced pursuant NY CPLR § 3218 because three years have since passed, it is an admission against interest tending to support the facts hereby alleged.

16. Russack signed on behalf of the Corporation that it would "not sell, mortgage, assign, lease, convey, transfer, encumber, pledge, hypothecate or otherwise take any action" in the condominiums owned by the Corporation that would saddle Plaintiff's security interest.   (Exhibit C).

17. Finally, on March 12, 2023 Plaintiff and Russack entered into an options Agreement ("Agreement") in which Russack initially paid $45,000, equivalent to 3% of $1.5 million, with the option to buy back his shares in the Corporation for $1.5 million by a closing date three months later on June 15, 2020. (Exhibit D).

18. The Agreement gave Russack the option to extend the closing date to buy back his shares in the Corporation for up to nine months after initial June 15, 2020 closing date by

paying Plaintiff $15,000 a month for the extension. This amount is equivalent to 1% of $1.5 million a month.

19. The parties agreed that Russack would lose his right to reclaim his shares in the Corporation if he failed to pay $1.5 million on the agreed closing date unless the closing date was extended pursuant to the terms of the Agreement.

20. If Russack failed to tender $1.5 million on the closing date Plaintiff would then have the option to cancel the "Agreement and apply all monies deposited [t]hereunder towards payment of liquidated damages." (Id. ¶ 5).

21. Russack agreed "to indemnify and hold Seller harmless from and against any and all liability . . . including reasonable legal and accounting fees and expenses . . . arising out of Purchaser's default with respect to any other matter or thing herein assumed by Purchaser;" (Id. ¶ 9).

22. After securing the original $1.5 million loan by way of Russack's assignment of his shares in the Corporation to Plaintiff, Plaintiff wired Russack the first $600,000 on the next day, March 13, 2020.

23. On March 17, 2020, Joseph Harrison, Esq., of HSK Law Group, opined that the Assignor, Russack, "can be relied on by"

Plaintiff and that the said "Assignor is the sole owner of fifty (50%) of the shares in the Company." (Exhibit E).

24.  Plaintiff subsequently wired Russack another $625,000 on March 19, 2020.

25.  Harrison was an associate or partner of HSK with the authority to practice law as an agent of HSK.

26.  Harrison's actions upon which Jest Holdings relied were within Harrison's scope of his authority within HSK, intending to bring benefit to HSK by complying with the instructions of its client in its legal practice.

27.  Harrison knew, or should have known, when he represented to Plaintiff that Russack owned half of the shares in the Corporation, the terms of the Agreement that Plaintiff was indemnified for attorney fees and other costs.

28.  Finally, Plaintiff wired Russack $22,000 on March 23, 2020.

29.  After Russack exhausted the maximum number of monthly extensions of the closing date to buy back his shares in the Corporation, the parties on March 15, 2021 amended the agreement to increase the purchase price to $1,605,000 for Russack to buy back his shares and gave Russack the option to further extend the closing date one month at a time for another year until March 15, 2022, as long as Russack paid Plaintiff $15,000 a month. (Exhibit F).

30. On March 15, 2022, the parties again amended their agreement again, giving Russack the option to extend the closing date one month at a time for another six months by paying Plaintiff $17,500 a month and after those six months Russack would have the option to extend the closing by another six months if he paid Plaintiff $20,000 a month. (Exhibit G).

31. Jest Holdings also agreed that "the Agreement and this Second Amendment shall immediately terminate and be of no further force or effect in the event that the closing does not occur within two (2) business days following the sale or refinance of Purchaser's office property commonly known as 5901 West Side Avenue, North Bergen, New Jersey."

32. 5901 West Ave Properties LLC. is the owner of 5901 West Side Avenue, North Bergen, New Jersey.

33. By information and belief, Russack the owner of 5901 West Ave Properties LLC.

34. On May 2, 2022, Plaintiff demanded access to the Corporation's financial documents. (Exhibit H).

35. On July 11, 2022, Defendant Henry Weinstein, by way of his attorney, Andrew Freidman, Esq., claimed that Russack no longer owned any part of the Corporation at the time

he assigned his shares to Plaintiff on March 12, 2020.
(Exhibit I).

36. At no time before July 11, 2022, was Plaintiff's owner
    made aware that Russack allegedly did not own half of the
    Corporation.

37. Russack's last monthly payment to extend the closing date
    was on November 11, 2022. Thereafter he did not tender to
    Plaintiff the purchase price and defaulted on the
    Agreement losing his right to buy back his shares.

38. By way of Weinstein's and his attorney's representation
    that Russack did not own any share of the Corporation, and
    by way of the fact that Russack has not complied with the
    delivery of his alleged shares in the Corporation,
    Plaintiff alleges that Russack and Joseph Harrison, Esq.,
    misrepresented Russack's ownership in the Corporation and
    Russack further misrepresented that he had authority to
    execute an agreement or declaration on behalf of the
    Corporation.

39. Hence, Plaintiff, at this time before discovery, pleads in
    the alternative. Either Russack and Harrison falsely
    represented that Russack owned half of the Corporation to
    secure a $1.5 million loan by assigning those shares to

Plaintiff or if Weinstein is unlawfully holding Plaintiff's
shares and keeping the profits thereof.


AS TO DEFENDANT RUSSACK:

### Count I-Breach of Contract

40. Plaintiff repeats and realleges each and every allegation
    stated and contained in the above paragraphs as if the same
    were set forth fully and in their entirety herein.

41. Defendant Ira Russack, for valuable consideration, assigned
    his 50% ownership shares of Woodruff Development Corp. to
    Plaintiff on March 12, 2020.

42. Plaintiff and Russack subsequently entered into an
    Agreement giving Russack the option to repurchase his
    shares by an agreed closing date or to extend the closing
    date for a limited amount of months, after which the option
    would be withdrawn.

43. The recitals to the Agreement acknowledge the Assignment of
    Russack's shares to Plaintiff and described the Corporation
    as the owner of twelve condominium units "set forth on
    Exhibit 'A' attached hereto and made a part hereof."

44. By information and belief, the condominiums units are worth
    approximately $8 million; Russack's share was worth
    approximately $4 million.

45. Russack did not comply with the terms of the Agreement to
    buy back his shares that he originally assigned to
    Plaintiff for valuable consideration. The option to buy
    back his shares became null and void.

46. Russack breached contract by not assigning his 50% share
    the Corporation to Plaintiff.

47. Plaintiff's expectation was to become owner of 50% of the
    Corporation worth approximately $8 million had Russack not
    breached the contract to assign his shares to Plaintiff.

48. Russack is liable to Plaintiff for $4 million in damages,
    the value of the Corporation, and profits, for breach of
    contract, or an amount the Court determines to be just, and
    for all Plaintiff's expenses, including attorney fees,
    associated with this litigation pursuant to the Agreement.

   AS TO DEFENDANT RUSSACK:

Count II — Fraud

49. Plaintiff repeats and realleges each and every allegation
    stated and contained in the above paragraphs as if the same
    were set forth fully and in their entirety herein.

50. In addition to Russack's breach of contractual duties to
    Jest Holding, Defendant Ira Russack intentionally and
    fraudulently represented that he owned 50% of Woodruff

Development Corp. in order to induce Plaintiff to enter into the contract with him.

51. Russack also represented to HSK and attorney Harrison, because of the trust Jest Holdings would put in the opinion of a lawyer and firm, that he owned a 50% share in the Corporation and exercised authority on behalf of the Corporation, to support his fraudulent scheme of convincing Jest Holdings of his ownership of the Corporation and authority.

52. Additionally Russack intentionally and falsely represented himself, without authority, as an officer of Woodruff Development Corp. to fraudulently convince Jest Holdings that he was binding the Corporation to a Declaration of Restrictions preventing it from selling any of its twelve property assets.

53. Russack's representation to Jest Holdings, by way of his own assurance and backed by the assurance of a lawyer and his firm, was before Jest Holdings committed to the contract and delivered the funds to Russack; and Russack continued to represent his ownership thereafter in order to secure extensions of the terms of initial agreement.

54. By information and belief Russack knew, or should have known, that he did not own a 50% share of the Corporation and did not have authority to represent the Corporation.

55. By way of Weinstein's and Weinstein's attorney's representation that Russack did not own any share of the Corporation, Plaintiff discovered that Russack, Joseph Harrison, Esq., and HSK fraudulently misrepresented Russack's ownership in the Corporation and that Russack further fraudulently misrepresented that he had authority to execute an agreement or declaration on behalf of the Corporation.

56. The fraud was discovered on July 11, 2022 when Defendant Woodruff Development Corp., by way of its attorney Andrew Freidman, Esq., represented that Russack had previously assigned his half of the Corporation to Defendant Henry Weinstein on March 10, 2018 and had no remaining interest in Woodruff Development Corp. on March 12, 2020 when Russack assigned it to Plaintiff.

57. Plaintiff reasonably relied upon Russack's and the attorney's representation that Russack owned half of the Corporation before delivering Russack $1.5 million and entering into the Agreement.

58. Plaintiff reasonably relied upon Russack's representation that he had the authority to restrict the Corporation from selling its assets before delivering Russack $1.5 million and entering into the Agreement.

59. Plaintiff has been injured as a result of its reliance upon Russack fraudulent representation to him and his fraudulent representation to his attorney because Jest Holdings has been deprived of $1.5 million and interest.

60. Plaintiff has also been injured as a result of its reliance upon Russack and his fraudulent representation to his attorney because Plaintiff has not received the shares of the Corporation that Russack assigned to it valued approximately $4 million and profits.

AS TO DEFENDANTS RUSSACK, HARRISON, AND HSK:

Count III-Promissory Estoppel/Detrimental Reliance

61. Plaintiff repeats and realleges each and every allegation stated and contained in the above paragraphs as if the same were set forth fully and in their entirety herein.

62. Defendant Ira Russack unambiguously represented to Plaintiff that he owned 50% of Woodruff Development Corp.

63. Russack retained Defendant HSK Law and Defendant Joseph Harrison to reassure Plaintiff that he owned 50% of the Corporation.

64. Defendant Joseph Harrison, Esq., in a letter dated March 17, 2020, opined to Plaintiff that Russack owned 50% of the shares in the Corporation thereby misrepresenting Russack's ownership.

65. Harrison was an agent of HSK acting within the scope of his authority in HSK on behalf of a client thereby profiting himself and HSK to the detriment of Plaintiff.

66. Plaintiff relied upon the assurance of HSK Law and Harrison that Russack owned 50% of the Corporation.

67. Plaintiff forwarded Russack $1.5 million because he reasonably relied upon the validity of Russack's assignment of his 50% share in Woodruff Development Corp. as security.

68. Russack profited by receiving the funds to the detriment of Plaintiff.

69. Harrison and Russack intended that Jest Holdings would rely upon their assurances of Russack's share in the Corporation was true.

70. Plaintiff has been injured as a result of its reliance upon Russack, Harrison, and HSK because it has been deprived of $1.5 million and interest.

71. Plaintiff has been injured as a result of its reliance upon Russack, Harrison, and HSK that the Corporation that

Russack assigned to it valued approximately $4 million and profits.

AS TO DEFENDANTS RUSSACK, HARRISON, AND HSK:

<u>Count IV-Breach of Fiduciary Duty</u>

72. Plaintiff repeats and realleges each and every allegation stated and contained in the above paragraphs as if the same were set forth fully and in their entirety herein.

73. Plaintiff became a shareholder in the Corporation when Russack assigned his shares to Plaintiff.

74. Russack owed Plaintiff a fiduciary duty because he represented himself as the owner and an officer of the Corporation.

75. Russack continued to represent himself as an officer and fiduciary when he brought Woodruff Development Corp. into a Declaration of Restriction promising that the Corporation would not sell any of its twelve property assets in which he assigned his shares to Plaintiff.

76. Russack breached his fiduciary duty to Plaintiff by way of a false legal instrument that restricted the Corporation from transferring any of the twelve condominiums.

77. Harrison and HSK had a fiduciary duty to Jest Holdings because their legal representation of Russack was for the benefit of Jest Holding, and Harrison's breach of this duty caused injury to Jest Holdings.

78. Harrison and HSK had a fiduciary duty as duly licensed attorneys at law to diligently investigate the truth of the facts that became the basis of their legal opinion.

79. Plaintiff trusted the opinion of Harrison as a duly license attorney at law and HSK as law firm.

80. Harrison was an agent of HSK acting within the scope of his authority in HSK on behalf of a client thereby profiting Harrison and HSK.

81. Defendant Joseph Harrison, Esq., in a letter dated March 17, 2020, opined to Plaintiff that Russack owned 50% of the shares in the Corporation.

82. Jest Holdings entered the transaction relying upon the professional opinion of HSK and Harrison that Russack owned half of the Corporation, promising Jest Holdings a monthly payment, repayment, or ownership of Russack's share of a valuable corporation by way the transaction.

83. By assuring Jest Holdings of Russack's share in the Corporation, Harrison, and HSK clearly intended Jest

Holdings to be a beneficiary of the advise of Harrison and the law firm.

84. Plaintiff has been injured as a result of the fiduciary misconduct of Russack, Harrison and HSK because it has been deprived of $1.5 million and interest.

85. Plaintiff has been injured as a result of the fiduciary misconduct of Russack, Harrison, and HSK because Plaintiff has not received the shares of the Corporation that Russack assigned to it valued approximately $4 million and profits.

AS TO DEFENDANT HENRY WEINSTEIN AND OCEAN WOODRUFF CORPORATION:

Count V — Conversion (In the alternative)

86. Plaintiff repeats and realleges each and every allegation stated and contained in the above paragraphs as if the same were set forth fully and in their entirety herein.

87. Plaintiff Jest Holdings, by way of assignment, owns half of the Corporation and is entitled to half of its profits.

88. On May 2, 2022, Plaintiff demanded that Weinstein and the Corporation disclose the corporate balance sheet and profit and loss statements in order to ascertain Plaintiff's shares and profits.

89. On July 11, 2022, Defendant Henry Weinstein and the Corporation, by way of their attorney Andrew Freidman, Esq., denied Plaintiff's demand. He maintained that Plaintiff did not have any shares in the Corporation because Russack had previously assigned them to Weinstein.

90. Defendant Henry Weinstein and the Corporation are in possession of the shares that Russack assigned to Plaintiff and their profits.

91. The Court will determine whether Weinstein and the Corporation are wrongfully withholding and denying Plaintiff's share of stock and profits.

92. Weinstein and the Corporation are thereby liable for damages to Plaintiff due to conversion of Plaintiff's shares and profit.

Count VI-Declaratory Judgment Pursuant to N.Y. CPLR 3001/
28 U.S.C. §§ 2201-2202

93. Plaintiff repeats and realleges each and every allegation stated and contained in the above paragraphs as if the same were set forth fully and in their entirety herein.

94. Plaintiff Jest Holdings by way of assignment owns half the shares in the Corporation and is entitled to half of its profits.

95. The Defendant Corporation and Defendant Henry Weinstein deny Plaintiff's ownership of any shares in the Corporation.

96. Plaintiff respectfully request declaratory judgment that it owns 50% of outstanding shares in the Corporation.

**WHEREFORE, Plaintiff Jest Holdings demands judgment against Defendants as follows:**

1) **ON COUNT ONE,** breach of contract, against defendant Ira Russack:

a) That judgment be rendered against Russack that he is liable to Plaintiff for damages it sustained of $4,000,000, or an amount the Court considers just, and for profits, because Russack failed to perform his obligation under contract to assign his 50% share of the Corporation to Plaintiff.

b) That the Plaintiff recovers from Russack reasonable and adequate attorney's fees and disbursements as agreed;

c) Further relief as this Court may seem just and proper.

1) **ON COUNT TWO,** fraud, against defendant Ira Russack:

a) That judgment be rendered against Russack that he is liable to Plaintiff for damages it sustained of $4,000,000, or an amount the Court considers just, and for profits, or in the alternative, for $1,500,000 with interest, for fraudulently representing his ownership of the Corporation and its assignment to Plaintiff.

b) That Plaintiff recovers from Russack reasonable and adequate attorney's fees and disbursements as agreed and pursuant to statute;

c) That Plaintiff recovers of Russack exemplary and punitive damages in the amount as may be requested at trial or granted by the Court; and

d) Further relief as this Court may seem just and proper.

3) **ON COUNT THREE**, Promissory Estoppel/Detrimental Reliance, against defendants Russack and Harrison:

a) That judgment be rendered against defendants Russack and Harrison that they are liable to Plaintiff for damages it sustained of $4,000,000, or an amount the Court considers just, and profits, or in the alternative, for $1,500,000 with interest, jointly and severely, for causing Plaintiff to rely upon their representations,

b) That Plaintiff recover from the Defendants, jointly and severally, reasonable and adequate attorney's fees and disbursements as agreed; and

d) Further relief as this Court may seem just and proper.

4) **ON COUNT FOUR**, Breach of Fiduciary Duty, against defendants Russack and Harrison:

a) That judgment be rendered against defendants Russack and Harrison that they are liable to Plaintiff for damages it sustained of $4,000,000, or an amount the Court considers just, and profits, or in the alternative, for $1,500,000 with interest, jointly and severely, for breach of fiduciary duty.

b) That Plaintiff recover from the Defendants, jointly and severally, reasonable and adequate attorney's fees and disbursements as agreed and pursuant to statute;

c) That Plaintiff recover from the Defendants, jointly and severally, exemplary and punitive damages in the amount as may be requested at trial or granted by the Court; and

d) Further relief as this Court may seem just and proper.

**ON COUNT FIVE**, Conversion, against defendants Weinstein and the Corporation:

a) That judgment be rendered against defendants Weinstein and Woodruff Development Corporation, that they are liable to Plaintiff for $4,000,000, or an amount the Court considers just, with profits, for conversion of Plaintiff's shares in the Corporation assigned to it by Russack.

b) That Plaintiff recover of the Defendants, jointly and severally, attorney fees if available, and for exemplary and punitive damages in the amount as may be requested at trial or granted by the Court; and

c) Further relief as to this Court may seem just and proper.

**ON COUNT SIX**, Declaratory Judgment:

a) That the Court renders a Declaratory Judgment that Plaintiff Jest Holdings owns half the shares in the Corporation and is entitled to half of its profits.

b) That Plaintiff recovers of the Defendants, jointly and severally, attorney fees if available, and for exemplary and punitive damages in the amount as may be requested at trial or granted by the Court; and

c) Further relief as to this Court may seem just and proper.

**DESIGNATION OF TRIAL COUNSEL AND DEMAND FOR JURY TRIAL**

The Court is advised that Arthur H. Lang, Esq. is hereby designated as trial counsel.

The Court is advised that Plaintiff demands a jury trial.

s/*Arthur H. Lang*

Arthur H. Lang
Attorney for Plaintiff
NY Att. Reg. No. 5105408
918 East Kennedy Blvd.
Lakewood, NJ 08701
732-609-5530
lakewoodlaw@gmail.com
Dated: September 15, 2023

**CERTIFICATION**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

(1) Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) Is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

(3) The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

support after a reasonable opportunity for further

investigation or discovery; and

(4) The complaint otherwise complies with the requirements of

Rule 11.

I certify under penalty of perjury that the foregoing is true
and correct.


Dated: June 6, 2023

s/*Arthur H. Lang*
Arthur H. Lang
Attorney for Plaintiff
NY Att. Reg. No. 5105408
918 East Kennedy Blvd.
Lakewood, NJ 08701
732-609-5530
lakewoodlaw@gmail.com