UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JEST HOLDINGS, LLC.,

                                 Plaintiff,

       -against-

                                          Case No.: 1:23-cv-04260-DG-RML

IRA RUSSACK, HENRY WEINSTEIN, OCEAN
WOODRUFF DEVELOPMENT CORP., JOSPEH
HARRISON, ESQ., and HSK LAW GROUP, LLC.,

                                 Defendants.
------------------------------------------------------------------------X

### Defendants Henry Weinstein and Ocean Woodruff Development Corp.'s Opposition to Plaintiff's Motion for Summary Judgment

Defendants Henry Weinstein and Ocean Woodruff Development Corporation (hereinafter referred to collectively as Weinstein) by their attorney, submits this Memorandum of Law in Opposition to plaintiff's motion for summary judgment as to Count VI (declaratory judgment).

### Preliminary Statement

As set forth in plaintiff's Amended Complaint, the seminal issue in this case is whether defendant Russack has any obligations to plaintiff, and if so, whether he has defaulted on same. Weinstein was not involved with, never consented to, nor does he have anything to do with any of those issues.

Accordingly, with respect to that portion of the motion directed at Weinstein, it is submitted that the motion is premature and presupposes that plaintiff has already prevailed in this litigation as against defendant Russack. It is anticipated that Russack will vigorously oppose the motion, and Weinstein defers to whatever arguments are raised therein in opposition. On this record, however, Weinstein submits that issues of fact as to the propriety of the loan in the first

instance abound, mandating denial of this motion in its entirety, and requiring a trial. When that occurs the issue of what Russack's interest in Ocean Woodruff was at the time of his dealings with plaintiff becomes germane. Prior thereto it is irrelevant as to whether Mr. Russack had anything to pledge to the plaintiff. In any event, on these submissions, plaintiff has failed to establish its *prima facie* entitlement to summary judgment against Weinstein and certainly has not eliminated the issue of Weinstein's entitlement to a $750,000 credit at the time of any transfer of Mr. Russack's shares.

### Standard for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102-03 (9th Cir. 2000).

**THE PLAIN LANGUAGE OF THE OCTOBER 16, 1985, AGREEMENT BETWEEN WEINSTEIN AND RUSSACK PROHIBITED ASSIGNMENT OF THE CORPORATION'S SHARES AND RENDERS THE ASSIGNMENT HEREIN VOID AB INITIIO, AND AT MINIMUM THERE ARE ISSUES OF FACT IN THIS REGARD**

Under New York law, the interpretation and enforcement of non-assignment clauses in contracts depend on the specific language used in the clause and the intent of the parties. Courts generally distinguish between clauses that render assignments void and those that merely create a personal covenant not to assign. If a non-assignment clause includes clear and explicit language stating that any assignment made in contravention of the clause is void, such assignments are rendered legally ineffective. For example, in *Brettler v. Allianz Life Ins. Co. of N. Am.*, 40 N.Y.3d 450, the court emphasized that anti-assignment clauses must include the "plainest words" to declare assignments void; otherwise, the clause is treated as a personal covenant not to assign, which only allows for damages against the assignor. *Brettler v. Allianz Life Ins. Co. of N. Am.,* 40 N.Y.3d 450 (2023). Similarly, in , *Macklowe v. 42nd St. Dev. Corp.*, 170 A.D.2d 388, (1st Dept. 1991), the court held that assignments made in violation of a prohibition clause are void if the contract contains "clear, definite, and appropriate language" declaring the invalidity of such assignments. *Macklowe v. 42nd St. Dev. Corp.,* 170 A.D.2d 388. *See also, Cole v. Metropolitan Life Insurance*, 273 A.D.2d 832 (4th Dept. 2000); *Spinex Lab v. Empire Blue Cross Blue Shield*, 212 A.D.2d 906 (3rd Dept. 1995).

Furthermore, New York law explicitly allows restrictions on the transfer of shares in closely held corporations. *NY CLS Bus Corp § 1511*. Shareholder agreements that impose restrictions on the transfer of shares are enforceable if they are in writing, signed by the parties, and comply with statutory requirements. For example, agreements requiring shares to be offered to other shareholders or the corporation before being sold to third parties have been upheld as valid. *Celauro v 4C Foods Corp.,* 88 A.D.3d 846, *North Shore Masons Supply Corp. v. Gusman (In re Gusman),* 178 A.D.2d 597.

The intent of the parties is a critical factor in determining whether a legal agreement may be assigned. Courts generally look to the language of the agreement to ascertain the parties' intent, and where the language is clear and unambiguous, the intent is determined as a matter of law without resorting to extrinsic evidence. *American Express Bank, Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275, (1st Dept. 1990); *Blumenkrantz v. May, 293 A.D.2d 850, Transmedia Rest. Co. v. 33 E. 61st St. Rest. Corp.,* 184 Misc. 2d 706.  For example, in *American Express Bank, Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275,  the court emphasized that the intent of the parties governs and that unambiguous agreements should be enforced according to their plain meaning. *American Express Bank, Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275.  Similarly, in *Blumenkrantz v. May,* 293 A.D.2d 850, (3d Dept. 2002) the Third Department held that when the intention of the parties is fully determinable from the language of the agreement, interpretation is a matter of law. *Blumenkrantz v. May,* 293 A.D.2d 850 (3d Dept. 2002).

New York law also recognizes the principle of freedom of contract, allowing parties to include provisions that restrict or prohibit assignment.  Such provisions are enforceable when they use clear and definite language, as seen in *Allhusen v. Caristo Const. Corp.,* 303 N.Y. 446 (1952) where the court upheld a clause explicitly prohibiting assignment and rendering any attempted assignment void. *Allhusen v. Caristo Const. Corp., 303 N.Y. 446, Madison Pictures v. Chesapeake Indus.,* 147 N.Y.S.2d 50 (Sup. Ct., 1955), *, Univ. Mews Assocs. v. Jeanmarie,* 122 Misc. 2d 434, (Sup. Ct., 1983).

Statutory provisions further support the importance of intent. Under *NY CLS UCC § 2-210,* unless otherwise agreed, rights under a contract are generally assignable unless the assignment would materially alter the other party's obligations or risks.

Here, the instant motion must be denied as Mr. Weinstein and Mr. Russack clearly agreed that the shares in their closely held corporation were not assignable absent written consent. At minimum, there are issues of fact in this regard. Initially, it is undisputed that the October 16, 1985, written agreement between Mr. Russack and Mr. Weinstein was in effect at the time of Mr. Russack's transactions with plaintiff. It is also undisputed that plaintiff knew of the October 16, 1985, agreement, and went so far as to obtain a legal "Opinion Letter" as to its meaning. That agreement clearly sets forth Mr. Russack and Mr. Weinstein's obligations to one another vis-vis the corporation. *See, e.g.,* Plaintiff's Statement of Undisputed Material Facts, at para. 33. A copy of the October 16, 1985, Agreement is annexed hereto as exhibit A. With respect to assignability, that agreement could not be clearer, as it sets forth that:

> "This letter sets forth our understanding regarding our ownership of the outstanding stock of the above-mentioned corporation:"

As to assignability, paragraph 7 the agreement plainly sets forth that:

> "This agreement may not be changed orally, may not be assigned and shall be construed in accordance with ethe laws of the State of New York."

*See,* exhibit A.

On its face, the agreement is clear and memorializes their mutual intent that the shares were not assignable, absent some further writing. Mr. Weinstein's deposition testimony also establishes that his intent was to prevent either he or Mr. Russack from unilaterally transferring the shares. In this regard, Mr. Weinstein explained that he had known Mr. Russack for over 50 years, that he undertook all day-to-day operations of the corporation, and that Mr. Russack could not transfer the shares without telling him. *See,* exhibit B, deposition excerpts of Henry Weinstein, at p. 6, 7, 31-32, 34, 41. Mr. Russack's testimony is to the same effect. *See,* exhibit C, deposition of Ira Russack at p. 15. For purposes of this motion, this is sufficient to establish an

issue of fact as to the parties' intent to prohibit transfer of the shares absent written consent of the other partner. Indeed, such a transfer absent consent would obviously impede the other partner's rights. This is particularly clear in this case where the partners had a 50-year relationship, operated essentially on a handshake, and as per the October 16 agreement, Mr. Weinstein handled the day-to-day management on an uncompensated basis. Given this history, allowing the shares to be assigned absent the other partner's knowledge is simply unfathomable as any such transfer would materially impede the non-transferring partners' rights.

In *C.U. Annuity Serv. Corp. v. Young, 281 A.D.2d 292*, (1st Dept. 2001), the First Department enforced a non-assignment clause that rendered the assignor "powerless" to assign, emphasizing that the expressed intent of the parties is critical. The court found that the language sufficiently barred the assignment, making it legally ineffective without requiring "magic words" to describe the effect of an attempted assignment. *C.U. Annuity Serv. Corp. v. Young,* 281 A.D.2d 292. On these facts, the Court should enforce the October 16, 1985, agreement and honor the plain meaning thereof and the parties clearly expressed intent.

Moreover, the plaintiff's own conduct demonstrates issues of fact as to the validity of the assignment pursuant to the October 16, 1985, Agreement. Again, it is undisputed that plaintiff was aware of that agreement prior to consummating its transaction with Mr. Russack and went to great lengths to obtain an "Opinion Letter" it deemed suitable as to the meaning of the Agreement. In that process, as plaintiff manipulated Mr. Russack into using counsel selected by Jest, the language of the "Opinion Letter" changed. The final version of that letter, authored by defendant Harrison, was silent as to the meaning of paragraph 7, deleting the initial language, authored by Noah Burton, Esq., and specifically advised that the validity of the assignment was "subject to the interpretation pf paragraph 7…" *See,* Exhibit D, annexed hereto. Notwithstanding

that Jest had the October 16 agreement and knew the language of the "Opinion Letter" had changed, plaintiff's counsel, Noah Burton, Esq., made no effort to contact either Mr. Weinstein or the condominium, prior to entering into its arrangement with Mr. Russack. *See,* exhibit E, deposition of Noah Burton at p. 179-180.  Plaintiff's omission in doing such basic due diligence is telling. This omission is significant as Jest's principal, Joseph Teichman testified that had he known of Mr. Harrison's opinion letter he would not have closed the transaction. *See,* exhibit F EBT of Joseph Teichman, at p. 165. There is a fair inference that certain parties to this transaction were looking to skirt the ramifications of the October 16 Agreement and press Mr. Russack into improperly moving forward. Given the present posture of the case this is an issue of fact which standing alone warrants denial of this motion.

Moreover, Jest knew that this deal resulted in Mr. Russack relinquishing his shares in a closely held corporation, whose only assets were the unsold shares in a condominium building. *See,* exhibit F, deposition of Joseph Teichman, at p. 167-168. Upon a valid transfer of those shares, Jest would effectively become Mr. Weinstein's partner.  To not even notify their soon-to-be-future partner, who was managing the corporation for free, without even asking for any financial information as to the value of the shares is shocking. In point of fact, such conduct flies in the face of a *bona fide* transaction and is in violation of the duties owed by shareholders in closely held corporations to one another.  Shareholders in closely held corporations are essentially partners and owe a fiduciary duty to one another. *See, e.g., Celauro v. 4C Foods Corp.,* 187 A.D.3d 836 (2d Dept. 2020), where the Second Department affirmed the grant of summary judgment to the defendant corporation, where it had refused to consent to the transfer of voting shares in a closely held corporation.

Here, plaintiff's actions in failing to advise Mr. Weinstein of the transaction, and in failing to abide by the terms of the October 16 Agreement, deprived Weinstein of knowledge of the underlying transaction and thereby deprived him of the opportunity to take measures to either block the transfer or otherwise protect his interests. Such action is inconsistent with, among other things, the duty of good faith and fair dealing. Plaintiff should not be allowed to benefit from its own decision to avoid alerting its future partner of its onerous deal with Mr. Russack, which upon consummation effectively would deprive its now partner of substantial rights.

To the extent that plaintiff asserts it reasonably relied upon the March 17, 2020, "Opinion Letter" of Joseph Harrison, Esq., such reliance is simply not reasonable.  Reasonable reliance is typically a question of fact. A plaintiff cannot assert reasonable reliance where she had the means to discover the nature of the transaction by the exercise of ordinary intelligence and failed to make use of those means. *See, e.g., Rubin v. Sabharwal,* 171 A.D.3d 580 (1st Dept. 2019); *Cascardo v. Dratel,* 171 A.D.3d 561(1st Dept. 2019); *Taurus Petroleum v. Global Emerging Markets, NA, Inc.,* (Sup. Ct. NY County, Index No., 654640/2017, Sherwood, J.); *United State Life Insurance Co. in the City of New York,* (Sup. Ct. NY County, Index No. 650221/2019, Sherwood, J.).  Certainly, an issue of fact exists as to whether such reliance was reasonable, and whether plaintiff's admitted failure to advise Weinstein of the transaction was in accordance with the October 16 Agreement and plaintiff's duty to its soon to be partner. The instant motion must, therefore, be denied as there are material issues of fact requiring adjudication.

**THERE ARE ISSUES OF FACT AS TO THE EFFECT OF THE MARCH 10, 2018, PROMISSORY NOTE**

Plaintiff also contends that the March 10, 2018, Promissory Note is not an encumbrance on Mr. Russack's shares.  As to this contention, plaintiff's submissions also fail to establish its right to summary relief.  Thus, in its "Statement of Undisputed Facts" plaintiff sets forth that "on

or about March 10, 2018, Mr. Russack executed a Promissory Note in favor of Mr. Weinstein. Statement of Undisputed Facts, para. 29. Pursuant to Exhibit 3, the "Weinstein Note," Mr. Russack was required to pay to Mr. Weinstein $750,000 in the event Mr. Russack sold his interest in 353 Ocean Ave., Brooklyn, New York, the Ocean Woodruff building as a carve out of the shares. It is undisputed that the Weinstein Note precedes the transaction at issue herein. There is no evidence that Mr. Russack otherwise satisfied the Weinstein Note. As set forth above, despite obvious issues with this transaction, plaintiff chose never to reach out to Mr. Weinstein to confirm Mr. Russack's interest in the corporation, or for any other reason. Consequently, assuming *arguendo,* that as of March 9, 2020, Mr. Russack maintained an interest in the corporation, upon conveyance of that interest the $750,000 of his shares became Mr. Weinstein's shares. A copy of that Promissory Note is annexed hereto as exhibit G.

Even accepting plaintiff's view that Mr. Russack remained an owner at the time of the subject transaction, that transaction itself triggered that $750,000 obligation as of the conveyance to plaintiff, and satisfied out of Mr. Russack's shares in the corporation prior to the effectiveness of any conveyance. Indeed, the very purpose of the Weinstein Note was to satisfy the debt out of Mr. Russack's shares as of any conveyance of Mr. Russack's interest in the corporation. Thus, under plaintiff's version of events, the triggering event depriving Mr. Russack of $750,000 of his interest in the corporation was the very transaction at issue. Because plaintiff submits no evidence as to the value of the shares of the corporation, plaintiff cannot establish that the $750,000 was not the entirety of Mr. Russack's interest. On this basis too, the instant motion must be denied.

Moreover, given the Weinstein Note, plaintiff was on at least imputed knowledge of Mr. Weinstein's claim to $750,000 of Mr. Russack's interest in the corporation. *See, e.g., Serota v.*

*Power House Realty Corp.,* 274 A.D.2d 427 (2d Dept. 2000), where knowledge of a lawsuit

precluded a bona fide purchaser claim. Here, plaintiff had actual knowledge of the operating

agreement prohibiting Mr. Russack's pledge of his shares; and should have known of Mr.

Weinstein's claim to full ownership of the corporation via the Weinstein Note but wholly failed

to do any due diligence. Accordingly, even if as of and after March 9, 2020, Mr. Russack

remained an owner of 50% of the corporate shares, and if the shares are indeed worth more than

$750,000, then plaintiff's claim is limited to Mr. Russack's shares less the first $750,000 due to

Mr. Weinstein.

WHEREFORE, defendants Henry Weinstein and Ocean Woodruff Development Corp.,

request that the plaintiff's motion for summary judgment should be denied in all respects, and for

such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York
February 25, 2026

Andrew M. Friedman, Esq. (AF-7122)
Friedman Sanchez, LLP
Attorneys for Henry Weinstein &
Ocean Woodruff Development Corp.
16 Court St., 26th Floor
Brooklyn, New York 11241
(718) 797-2488